**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| ASSET RECOVERY, INC.<br>an Illinois Corporation, | ) ) ) | FILED: MARCH 27, 2008 |
| Plaintiff, | ) ) ) | 08CV1786           EDA<br>JUDGE GETTLEMAN |
| v. | ) ) | MAGISTRATE JUDGE SCHENKIER |
| WHITNEY HOLDING CORPORATION,<br>a Louisiana Corporation, d/b/a<br>WHITNEY NATIONAL BANK, | ) ) ) ) | |
| Defendants. | ) ) | |

## NOTICE OF REMOVAL

TO:    Edward A. Cohen
       6901 W. 111th Street
       Worth, IL  60482
       ***Attorney for Asset Recovery, Inc.***

Defendant Whitney Holding Corporation, d/b/a Whitney National Bank ("Whitney"),

hereby gives notice of removal pursuant to 28 U.S.C. § 1446(b), of the above entitled action to

United States District Court, Northern District of Illinois, Eastern Division, from the Law

Division for the Circuit Court of Cook, where it is pending as case no. 2008 L 002645, for the

following reasons:

1.     On March 7, 2008 Asset Recover, Inc. filed a one count Complaint against

Whitney Holding Corporation d/b/a Whitney National Bank.

2.     On March 18, 2008 Whitney was served with Summons and a copy of the

Complaint.

3.     Asset Recovery, Inc. is an Illinois Corporation whose principal place of business

is in Cook County Illinois

4.     Whitney is a Louisiana Corporation whose principal place of business is in Louisiana.

5.     Asset Recovery, Inc.'s Complaint is seeking damages in the amount of $289,704.25.

6.     Less than 30 days have passed since Whitney was served with the Summons and Complaint.

7.     Accordingly, this matter could have been originally filed with this Court pursuant to 28 U.S.C. 1332.

8.     Copies of all process and pleadings served upon the Defendant are attached to this Notice as **Exhibit A.**

Date:  March 27, 2008

**WHITNEY HOLDING CORPORATION
d/b/a WHITNEY NATIONAL BANK,**


By: _____ */s/ Kurt M. Carlson* _____
One of its Attorneys

Kurt M. Carlson
Martin J. Wasserman
**TISHLER & WALD, LTD**. - #26508
200 S. Wacker Drive
Suite 3000
Chicago, IL 60606
Tel:  (312) 876-3800
Fax: (312) 876-3816
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned, a non-attorney, certifies that she served the foregoing **Notice of Removal** upon the aforementioned counsel, by placing a copy of same in a properly addressed, postage pre-paid envelope, in the U.S. Mail depository located at 200 South Wacker Drive, Chicago, Illinois this 27th day of March, 2008, at or before the hour of 5:00 p.m.

Patricia Searcy

Signed And Sworn To Before Me
This 27th day of March, 2008.

Notary Public

OFFICIAL SEAL
BONNY J WHITEFORD
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 08/26/10

*3/11/08*
*B. Chase*
*10:05 a*
*Pers. Served*

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served by Mail |
| 2420 - Served by Publication | 2421 - Served by Publication |

SUMMONS          ALIAS - SUMMONS          (Rev. 1/2/01) CCG 0001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

ASSET RECOVERY, INC.,
an Illinois Corporation,

                          Plaintiff,

vs.

WHITNEY HOLDING CORPORATION,
a Louisiana Corporation,
D/B/A WHITNEY NATIONAL BANK,

                          Defendants.

Please Serve:
Registered Agent:
Teresa Z. Lygate
Whitney Holding Corporation
626 Whitney Building
228 St. Charles Ave
New Orleans, LA 70130

### SUMMONS

To each defendant:

    YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the office of the Clerk of this Court at the following location:

    [X]  Richard J. Daley Center, 50 W. Washington, Room _____801_____, Chicago, Illinois 60602

You must file within 30 days after service of this summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

| | |
|---|---|
| Atty. No.: 39565 | WITNESS, |
| Name: Edward A. Cohen | MAR 07 2008 |
| Atty.for: Plaintiff | |
| Address: 6901 W. 111ᵗʰ Street | Clerk of Court |
| City/State/Zip: Worth, IL 60482 | Date of service: _____, _____ |
| Telephone: (708) 361-3030 | (To be inserted by officer of copy left with defendant or other person) |

Service by Facsimile Transmission will be accepted at: _____
                                                         (Area Code) (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS



## EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

ASSET RECOVERY, INC,
an Illinois Corporation,

       Plaintiff,

       v.

WHITNEY HOLDING CORPORATION,
a Louisiana Corporation, D/B/A
WHITNEY NATIONAL BANK,

       Defendants.

## VERIFIED COMPLAINT AT LAW

NOW COMES ASSET RECOVERY, INC., an Illinois corporation, ("Plaintiff"), by and through its attorneys, COHEN & HUSSIEN, P.C., and for its complaint against WHITNEY HOLDING CORPORATION, a Lousiana Corporation, D/B/A WHITNEY NATIONAL BANK, ("Defendant"), states as follows:

## BREACH OF CONTRACT

1.    ASSET RECOVERY, INC., is an Illinois corporation with its principal place of business located in Cook County, Illinois, engaged in the collection of outstanding receivables.

2.    Defendant is a banking and financial institution with its principal place of business located at 228 St. Charles Avenue, Suite 626, New Orleans, Louisiana.

3.    Defendant is the successor-in-interest to Madison Bank, which merged with and into Defendant on or around August 20, 2004, whereas Whitney National Bank by operation of law succeeded as assignee to all rights and obligations of Madison Bank

1

under any contracts or service agreements to which Madison Bank is a party pursuant to Davis' written consent as evidenced in the August 17, 2004 letter attached hereto as Exhibit A.

4.    On April 19, 1999, Madison Bank entered into a validly executed agreement with Davis Bancorp, Inc., hereinafter "Davis", for the purpose of providing Bank Courier Services. ("Agreement") A copy of the Agreement is attached hereto as Exhibit B.

5.    Pursuant to paragraph 11 of the Agreement, the Agreement became effective on April 26, 1999, and was to remain in force for five (5) years up until and through November 30, 2003.

6.    Throughout the course of business dealings, Madison Bank and Davis entered into various Schedule Modification and Amendments extending the terms of the Agreement.

7.    On or about July 6, 2006, Davis and Defendant entered into the most recent Schedule Modification and Amendment ("Amendment") in which Davis and Defendant agreed upon adding shipments to the existing schedule for Bank Courier Services. A copy of Amendment is attached as Exhibit C.

8.    Pursuant to the Amendment, Davis and Defendant agreed to a modification of the Agreement in which Davis' charges for services were increased per billing period and the Commencement Date was modified to July 24, 2006.

9.    Pursuant to the Agreement and the Amendment, the Agreement remained in force for five years from the Commencement Date, through July 24, 2011.

10.    At all times during the pendency of the Agreement, Davis rendered and performed all

2

services and duties required of Davis in accordance with the Agreement.

11.    In or about August, 2007, Defendant terminated the Agreement prior to the agreed upon termination date and schedule.

12.    Paragraph 15 of the Agreement provides that should Defendant unilaterally terminate the Agreement prior to the scheduled termination date, then it is agreed that as liquidated damages, and not as a penalty, Defendant shall pay an amount equal to seventy-five (75%) percent of the charges remaining to be paid through the scheduled termination date of the Agreement.

13.    As a result of Defendant's unilateral early termination of the Agreement, Defendant owes Plaintiff $289,704.25.

14.    Subsequent to Defendant's unilateral termination, Davis assigned to Plaintiff all of its rights, title and interests in and to the Agreement.

15.    Both Davis and Plaintiff have made numerous demands upon Defendant for the payment due and owing per the Agreement, but Defendant has failed and refused to pay same.

16.    Defendant continues in its failure and refusal to remit payment to the Plaintiff for the early termination of the Agreement.

17.    Davis and Plaintiff have performed all terms and conditions required of them.

18.    Defendants failure to pay the amounts due and owing under the Agreement constitute a breach of the Agreement.

19.    Pursuant to paragraph 14 of the Agreement, Defendant is responsible for all costs and expenses incurred by Plaintiff, including Plaintiff's attorney's fees.

3

20.    Furthermore, pursuant to paragraph 14 of the Agreement, it is agreed that the proper

venue for any claims resulting from the breach of the Agreement shall be in Cook

County, Illinois.

WHEREFORE, ASSET RECOVERY, INC., prays for the entry of a judgement

in its favor and against Defendant, WHITNEY NATIONAL BANK, herein, in the amount of

$289,704.25 through the date of judgment, plus costs and attorneys' fees, and for such further

relief as this Court deems just and proper.

Respectfully submitted,
Cohen & Hussien, P.C.

By: _____
One of Plaintiff's attorneys

Attorney Code. 39565
COHEN & HUSSIEN
Attorneys for Plaintiff
6901 W. 111th Street
Worth, IL 60482
(708) 361-3030

4

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned is a duly authorized officer or agent of the Plaintiff Corporation and certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_Jerald J. Lim_  V.P.

Given under my hand and official seal, this 6th day of March, 2008.

Commission expires _May 1_  20 08

_Janet Summerfelt_
NOTARY PUBLIC

"OFFICIAL SEAL"
JANET J. SUMMERFELT
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 05/01/2008



Your Community Bank

August 17, 2004

VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED

Mr. Tom Davis
Davis Bancorp
1311 Westshore Blvd.
Tampa, FL 33607

Re:   Courier Service

Dear Mr. Davis:

Madison Bank will merge with and into Whitney National Bank ("Whitney") by August 20, 2004 or soon thereafter, subject to regulatory approvals.

Upon consummation of the proposed merger, Whitney shall by operation of law succeed as assignee to all rights and obligations of Madison Bank under any contracts or service agreements to which Madison Bank is a party.

Since any agreements between Madison Bank and Davis Bancorp may provide that they can only be assigned with the prior written consent Davis Bancorp, we hereby request that Davis Bancorp consent in writing to the assignment of any agreements between Davis Bancorp and Madison Bank to Whitney.

Since time is of the essence we request that you provide us with your written consent within ten (10) days of the date of this letter by signing the enclosed copy of this letter and returning in the enclosed postage paid envelope.

If you have any questions regarding this matter, please do not hesitate to contact me at (727) 786-3888.

Very truly yours,

Bill Loob
Vice President

The undersigned hereby takes cognizance of and consents to the assignment of any agreements by and between Davis Bancorp by Madison Bank to Whitney National Bank effective August 20, 2004.

Davis Bancorp

By  Tom Davis
            (Signature)

    Tom Davis
         (Print Name)

    8-18-04
         (Date)

Exhibit A

MEMBER
FDIC

**DAVIS BANCORP**

| DAVIS BANCORP | 1607 GLENVIEW ROAD |
| | GLENVIEW, ILLINOIS 60025-6901 |
| | 847/998-0000 | SECURITY SINCE 1951 |

APRIL 26, 1999
Commencement Date

MICHAEL J. CARROLL
(Sales Representative)

THIS AGREEMENT, Dated _____ APRIL 19, 1999 _____ Between Davis Bancorp Incorporated,

Glenview, Illinois, (hereinafter called Davis) and _____ MADISON BANK _____

_____ 35114 U. S. HIGHWAY 19 N. _____ PALM HARBOR _____ FL _____ 34682 _____ .
(stree; address)              (city)              (state)        (zip)

(hereinafter called the "CLIENT").

WITNESSETH: For and in Consideration of the mutual covenants and agreements and of the payments hereinafter mentioned, the parties hereto agree as follows:

(1) The Client and Davis agree that all service performed for the Client by Davis in addition to that specified in this Agreement and its exhibits shall be performed pursuant to the provisions, terms and conditions of this Agreement, and that the provisions and terms and conditions of this Agreement shall determine the rights and obligations of the parties with respect to any such additional service in the same manner and to the same extent as if such service had been specified in this Agreement except that Client agrees to pay to Davis such additional compensation (over and above that specified in paragraph 2 below) as shall be agreed to between the parties for such additional service and further excepting that the Commencement Date of such additional service shall then become the Commencement Date in par. 11 for the service provided in this Agreement. The parties recognize that due to economies of scale and efficiencies of operation, the level of compensation specified in all agreements between Davis and Client together with that specified in paragraph 2 below is based upon services to the Client being performed as a complete unit.

### SCHEDULE OF SERVICES AND ATTACHED EXHIBITS

| | | | | | |
|---|---|---|---|---|---|
| ☐ | Security Officer Service | (A) | ☐ | Polygraph Examinations | (I) |
| ☐ | Off Hour Alarm Response | (B) | ☐ | Psychological Testing | (J) |
| ☐ | Usher and Crowd Control | (C) | ☐ | Background Investigation | (K) |
| ☐ | Alarm Monitoring Service | (D) | ☐ | Undercover Investigation | (L) |
| ☒ | Bank Courier Service | (E) | ☐ | Equipment Leasing | (M) |
| ☐ | Armored Car Service | (F) | ☐ | Finger Printing | (N) |
| ☐ | A.T.M. Servicing | (G) | ☐ | Money Handling | (O) |
| ☐ | Employee Training | (H) | ☐ | Microfilm | (P) |

(2) Client agrees to pay Davis the following rates plus all applicable sales, use and/or similar taxes.

| Personnel, Service or Equipment | Rate |
|---|---|
| COURIER SERVICE | $ 700.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |

Holiday rates shall apply on all legally declared national, state or local holidays. In addition, Client will pay Davis overtime rates for work in excess of __N/A__ hours per day, or __N/A__ hours per week and the following special holiday rates:

| Holiday | Rate |
|---|---|
| New Years Eve, New Years Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day December 24th, Christmas Day, and also other Union designated holidays. | $ |

Client _____ MADISON BANK _____

By _Jan Reid_                                    Title _Asst VP_

DAVIS BANCORP INCORPORATED

By _M.J. Carroll_                                Title _VICE PRESIDENT_

(Terms continue on reverse side)

Exhibit B

Form C86
(Rev. 92)

(3) Client agrees to pay Davis within fifteen (15) days of presentation of each period invoice. Each period is defined as exactly 4 weeks and the charges stated in the above schedule for the services stipulated therein and federal, state and local taxes, where applicable, shall be added to said charges.

(4) Davis shall be responsible for the direct supervision of all Davis Personnel through designated representatives who will be available at reasonable times to consult with Client or its designated representatives.

(5) The services to be rendered under this Agreement by Davis shall be in conformity with operating procedures mutually agreed upon by Client and Davis. If, at the request of Client, Davis Personnel are assigned duties other than those agreed to by Davis, Client shall assume complete responsibility for any and all liability arising therefrom. Davis will remove from service as soon as a qualified replacement is available any Personnel who, in Client's opinion, are not qualified to perform work assigned.

(6) If client alters the originally agreed schedule of service during the term of this agreement, Davis will exercise its right to assess a surcharge of $100.00. This charge will represent the costs incurred by altering assignments, employees, scheduling, etc.

(7) Client agrees that it will not, for a period of at least one year after termination of this Agreement, hire for its own account any Personnel furnished by Davis to Client in the performance of this Agreement. In the event Client shall violate the provisions of this Paragraph, Client shall pay to Davis the sum of $1,000.00 for each such person so employed in violation hereof.

(8) The rates quoted will remain in effect until each annual anniversary or in the event of change in any federal, state or municipal legislation, regulation, administrative ruling or collective bargaining agreement effecting any change in work hours, pay rates, working conditions or the cost of performing this Agreement, Davis shall notify Client in writing of the change in the rates to be charged Client and the effective date of the change.

(9) Davis reserves the right to terminate this Agreement immediately upon default by Client in the payment of any monies due hereunder; or if at any time during the term of this Agreement there shall be filed by or against Client in any court, pursuant to any statute, either of the United States, or of any state, territory or possession, a petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver to receive all or a portion of Client's property; or if Client makes an assignment for the benefit of creditors.

(10) This Agreement may not be altered, modified or amended, except in writing, properly executed by a duly authorized representative of Davis and Client. This Agreement shall be governed by the laws of the State of Illinois.

(11) This contract shall become effective on Commencement Date and shall remain in force for five (5) years from that date. Thereafter, this contract shall automatically be renewed for a like term until terminated by either party by notice of writing of intention to terminate, given at least thirty (30) days prior to the expiration date or any renewal thereof.

(12) This Agreement is not assignable by Client without the prior written consent of Davis. Any attempt to do so shall give Davis the right to elect to continue or terminate this Agreement. Davis shall have the right to assign this Agreement to any successor in interest to the business of Davis, pursuant to any purchase, merger or other reorganization.

(13) Sales representatives are not authorized to sign this Agreement for Davis. This Agreement shall not become binding upon Davis until executed by an authorized manager or officer of Davis.

(14) It is agreed that the proper venue for any claims resulting from the breach of this written agreement shall be Cook County, Illinois, and that any and all such claims shall be heard non-jury. In any matter which is brought to litigation, the prevailing party shall recover its court costs and its reasonable attorney's fees.

(15) Should Client unilaterally terminate this agreement prior to the scheduled termination date of this agreement, then it is agreed that as liquidated damages, and not as a penalty, Client shall pay to Davis an amount equal to seventy-five (75%) percent of the 'charges' enumerated in the SCHEDULE supra scheduled to be paid through the scheduled termination date of this agreement.

(16) It is agreed that the entire contents of this Agreement, including the rates, are confidential. No part may be reproduced or relayed in any way whatsoever to any competitor of Davis.

(17) Davis reserves its right to void this Agreement if not effected by the commencement date.

(18) If it is determined that the expiration of any preceding agreement entered into by Client occurs after the commencement date, Davis shall defer its commencement date until such preceding agreement expires or otherwise becomes unenforceable against Client.

(19) Where microfilm is sold and processed as part of the service, it is understood that microfilm will be replaced if defective in manufacture labeling, or packaging or if damaged or lost by Davis. Except for such replacement the sale, processing, or other handling of this film for any purpose is without warranty or liability even though defect, damage or loss is caused by negligence or other fault. Davis will not be responsible for loss or damage to film or for any other loss, damage, or inconvenience of any kind incident to, or occasioned by any defect in, or failure of equipment or for indirect, collateral, or consequential damages.

**JRA DAVIS BANCORP**

DAVIS BANCORP INCORPORATED

Courier Services

Exhibit "E"

(1) Davis shall call for and transport non-negotiable documents such as cash letters, microfilm, bank checks, and data processing media, hereinafter called "traffic" and other non-negotiable papers as are used in the conduct of banking business according to the following schedule:

SCHEDULE

| SERVICE | FREQUENCY OF SERVICE (DAYS OF WEEK) | COMMODITY |
|---|---|---|
| From: To: SEE ATTACHED | | |
| From: To: | | |
| From: To: | | |
| From: To: | | |
| From: To: | | |
| From: To: | | |
| From: To: | | |
| From: To: | | |
| From: To: | | |
| From: To: | | |
| From: To: | | |

(2) SECURITY BOXES—Davis provides, when necessary, a properly secured, constructed, and maintained security storage box at the rate of $25 per billing period. This box is for the sole use of Client's items scheduled for Davis pick-up.

    (a)   Controlled Key System—For security purposes, Davis utilizes a controlled keying program wherein systematic key changing and control is strictly adhered to. Client agrees to original issuance of two keys, and if needed, additional keys are supplied by Davis for the cost of $10.00 each.

(3) The Shipper shall tender to Davis all traffic to be tendered to for-hire motor carriers of the commodities specified above, between the points specified in the schedule set forth above and agrees to pay the rate(s) set forth herein during the duration of this agreement.

(4) Davis shall be liable for loss or destruction of re-constructable traffic only up to $75,000.00 per shipment for the cost of re-construction and loss of interest actually sustained.

(5) Notwithstanding any other provisions of this agreement, it is agreed Davis shall not be liable for any loss caused by or resulting from:

    (a)  (1) Hostile or war-like action in time of peace or war, including action in hindering, combating, or defending against an actual, impending or expected attack, (a) by any Government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air force or (b) by Military, Naval and Air Forces; or (c) by any agent of any such Government, power, authority or forces.

             (2) Any weapon of war employing an atomic fission or radioactive force whether in time of peace or war.

SCHEDULE OF SERVICES
FOR
MADISON BANK

| Pick-up Point | Delivery Point | Days of Week | Commodity |
|---|---|---|---|
| Madison Bank 12975 Walsingham Road Largo | Madison Bank 35114 U.S. Hwy 19 N Palm Harbor | M,T,W,TH,F | Proof Interoffice |
| Madison Bank 35114 U.S. Hwy 19 N. Palm Harbor | Nations Bank 5519 N. Idlewild Tampa | M,T,W,TH,F | Proof |
| Madison Bank 35114 U.S. Hwy 19 N. Palm Harbor | FRB Drop Station Tampa Airport | M,T,W,TH,F | Proof |

(3) Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, or confiscation by order of any Government of public authority; or risks of contraband or illegal transportation or trade.

(4) Nuclear reaction or nuclear radiation or radioactive contamination; all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the peril(s) for which liability is assumed by Davis OR; however, subject to the foregoing and to all other provisions of this contract, Davis shall not be liable for direct loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination.

(5) Inclement weather or acts of God which prevents Davis from completing deliveries in the normal time.

(6) Delay caused by the Shipper's failure to deliver the items to Davis at the regular time.

(b) Davis shall maintain insurance with a responsible insurance company in accordance with said liability. Additional liability protection is available from $75,000.00 to $100,000.00 per shipment at an additional cost of 50¢ per $100.00 of declared value.

(c) Davis shall be liable for non re-constructable items in an amount not to exceed $5,000.00 per shipment. Notice of loss must be given to Davis within twenty-four (24) hours of said loss at Davis's regional office set forth in Paragraph (10) or its executive offices, and in writing within fifteen (15) days thereof. This liability shall commence from the time Davis's bonded employees enter Shipper's premises and shall continue until delivery is effected or, in the event of non delivery, until returned to Shipper.

(6) The Shipper agrees it will cause all Property delivered into the care of Davis to be securely sealed or locked and clearly labeled with the consignor's and consignee's name and address, and that it will not conceal or misrepresent any material fact or circumstances concerning the Property delivered to Davis pursuant to this agreement.

Received Fax :         JUL 06 2006 3:09PM   Fax Station : HP LASERJET 3200         P. 1

JUL- 6-06 THU 1:56 PM                           FAX NO. 7291009                    P. 1
JUL 06 2006 11:27AM  HP LASERJET 3200

## SCHEDULE MODIFICATION
## AND AMENDMENT

Whereas Client is requesting a change in service to include the following modification(s)
Effective 7/24/06:

- [ ] Relocating Operations Center
- [ ] Re-direct Inclearings/Returns
- [x] Add Shipment(s) to Existing Schedule
- [ ] Opening New Branch Facility

- [ ] Changing Data Centers
- [ ] Re-direct Correspondent Bank Shipment(s)
- [ ] Eliminate Shipment(s) from Existing Schedule
- [ ] Closing Branch Facility

*MANATEE BID 6-9-06*

| Pick Up From | Delivery To | Days of Week |
|---|---|---|
| Whitney Bank Operations Palm Harbor | Whitney Bank Bradenton Office | M,T,W,TH,FR |
| Whitney Bank Bradenton Office | Whitney Bank Operations Palm Harbor | M,T,W,TH,FR |
| | | |
| | | |
| | | |

It is agreed, that the Schedule that is part of Davis' current contract with Client is hereby modified as
requested above.

It is agreed; the Commencement Date of Davis' current contract with Client is hereby modified to
7/24/06.

It is agreed, the charge for services is [x] increased [ ] decreased by 1900 per billing period.
Courier 8466

It is agreed, the nature of a conversion may result in client not dispatching counter work timely during the
first 30 days of conversion. Davis will maintain appropriate special delivery drivers to accommodate
emergency deliveries at no charge to client. Other than the foregoing, all terms of the present contract
between the parties remains unchanged.

Client *Whitney Bank*                      Date *7-6-2006*

By *Stan Johnson*                           Title *Transportation Manager*

DAVIS BANCORP INCORPORATED                  Date *9-6-2006*

By *THOMAS F DAVIS*                          Title *VP*

Form DBSM1RD

*cent by*       Exhibit C