**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ASSET RECOVERY, INC, an Illinois Corporation, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 08 C 1786 |
| WHITNEY HOLDING CORPORATION, a Louisiana Corporation, D/B/A WHITNEY NATIONAL BANK, ) ) ) ) ) | Judge Nan R. Nolan |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Asset Recovery, Inc. ("Asset Recovery") filed this diversity lawsuit charging Whitney Holding Corporation d/b/a Whitney National Bank ("Whitney Bank") with breach of contract in connection with a courier services agreement. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Whitney Bank now seeks partial summary judgment on Asset Recovery's claim for liquidated damages. For the reasons explained here, the motion is denied.

## BACKGROUND[1]

Asset Recovery, an Illinois corporation with its principal place of business in Cook County, Illinois, is a successor-in-interest to Davis Bancorp, Inc. ("Davis Bancorp"). One of the services it provides is the collection of outstanding receivables. Whitney Bank, a Louisiana corporation with its principal place of business in New Orleans, is the successor-in-interest to Madison Bank. (Doc. 55 ¶¶ 1-3.)

---

[1] Despite being given an opportunity to respond to Asset Recovery's Rule 56.1(B) statement of additional facts, Whitney Bank failed to do so. Those facts are thus deemed admitted. *See Chao v. Linder*, No. 05 C 3812, 2007 WL 4109685, at *1 (N.D. Ill. Nov. 15, 2007).

### A. The Courier Services Agreement

On April 19, 1999, Davis Bancorp entered into an agreement to provide Madison Bank with courier services (the "Agreement"). (*Id*. ¶ 7; Doc. 46 ¶ 1.) By its terms, the Agreement was effective on April 26, 1999, and was to remain in force for five years, until November 30, 2003. Throughout the course of business dealings, however, Davis Bancorp and Madison Bank agreed to certain Schedule Modification and Amendments that extended the terms of the Agreement. (Doc. 46 ¶¶ 3, 4.) On August 20, 2004, Madison Bank merged with and into Whitney Bank, which assumed all rights and obligations under the Agreement. (*Id*. ¶ 1 n.2; Doc. 55 ¶ 3.)

Nearly two years later, on July 6, 2006, Stan Anderson, Transportation Manager of Whitney Bank, and Tom Davis, Vice President of Davis Bancorp, signed the Schedule Modification and Amendment at issue in this case. Pursuant to the Amendment, Whitney Bank added shipments to the existing schedule of courier services and agreed to an increase in the amount Davis Bancorp charged for its services. (*Id*. ¶¶ 4, 5; Doc. 55 ¶ 8.) Paragraph 15 of the Amendment further provided:

> Should [Whitney Bank] unilaterally terminate this agreement prior to the scheduled termination date of this agreement, then it is agreed that as liquidated damages, and not as a penalty, [Whitney Bank] shall pay to Davis an amount equal to seventy-five (75%) percent of the 'charges' enumerated in the SCHEDULE supra scheduled to be paid through the scheduled termination date of this agreement.

(*Id*. ¶ 9; Doc. 55 ¶ 9.) The Agreement, as amended, was to remain in effect from July 24, 2006 through July 24, 2011. (*Id*. ¶ 6.)

### B. The Termination and Lawsuit

In August 2007, Davis Bancorp attempted to pick up Whitney Bank documents at one of the locations set forth in the Agreement. The building at that location, however, was locked and vacant. As a result, Davis Bancorp deemed Whitney Bank to have unilaterally terminated the Agreement. (*Id*. ¶¶ 7, 8.) When Whitney Bank refused to pay 75% of the charges remaining to

be paid on the Agreement, totaling $289,704.25, Davis Bancorp turned the debt over to Asset Recovery for collection. On March 7, 2008, Asset Recovery, as successor-in-interest to Davis Bancorp, filed a breach of contract action against Whitney Bank in the Circuit Court of Cook County, Illinois. (*Id*. ¶¶ 10, 11.) Whitney Bank removed the case to federal court on March 27, 2008, and shortly thereafter, the parties consented to the jurisdiction of the United States Magistrate Judge. (Doc. 15.)

Whitney Bank has moved for partial summary judgment that the liquidated damages clause set forth in Paragraph 15 of the Agreement is unenforceable. Davis Bancorp insists that summary judgment is inappropriate because there is a genuine issue of material fact regarding the validity of the clause.

## **DISCUSSION**

### A. Standard of Review

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In viewing the facts presented on a motion for summary judgment, the court must construe the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear*, 528 F.3d at 512.

**B.     Analysis**

Whitney Bank claims that Paragraph 15 is not a liquidated damages clause but, rather, an unenforceable penalty clause. Under Illinois law, a liquidated damages provision is valid and enforceable when:

> (1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages which might be sustained; and (3) actual damages would be uncertain in amount and difficult to prove.

*Grossinger Motorcorp., Inc. v. American Nat'l Bank and Trust Co.*, 240 Ill. App. 3d 737, 749, 607 N.E.2d 1337, 1345-46 (1st Dist. 1992). "The determination of whether a contractual provision for damages is a valid liquidated damages provision or a penalty clause is a question of law." *Id*., 607 N.E.2d at 1345. Illinois courts have made clear that the damages "must be a specified amount for a specific breach, not a penalty to punish for nonperformance or as a means to secure performance." *Id*., 607 N.E.2d at 1346. In other words, the damages must "place the nonbreaching party in a position that he or she would have been in had the contract been performed, not . . . provide the nonbreaching party with a windfall recovery." *Jones v. Hryn Dev., Inc.*, 334 Ill. App. 3d 413, 418, 778 N.E.2d 245, 249 (1st Dist. 2002).

**1.     Intention of the Parties**

Whitney Bank does not dispute that the parties intended to agree in advance to the settlement of damages that might arise from the breach. As Asset Recovery notes, there is no evidence that Davis Bancorp took advantage of Whitney Bank in negotiating or signing the Agreement with a liquidated damages clause, and the clause itself states that it is not a penalty. *See Penske Truck Leasing Co., L.P. v. Chemetco, Inc.*, 311 Ill. App. 3d 447, 455, 725 N.E.2d 13, 19 (5th Dist. 2000) (though not controlling, language that a liquidated damages clause "shall not

4

be construed as a penalty . . . should be given some weight.") This factor thus weighs in favor of finding that the clause is valid and enforceable.

### 2. Reasonableness

Whitney Bank does dispute that the liquidated damages clause was reasonable at the time of contracting, arguing that it bears no relation to the level of damages Davis Bancorp could be expected to suffer in the event of a breach. In support of this position, Whitney Bank directs the court to the deposition testimony of Janet Summerfelt, Davis Bancorp's Vice President in charge of billing, receivables and contracts. (Doc. 55 ¶ 5.) Ms. Summerfelt stated that Paragraph 15 seeks to recover "unrealized income from the commitment the client made to Davis" to utilize Davis Bancorp's services "over an extended period of time." (Summerfelt Dep., at 9.) In Whitney Bank's view, this testimony demonstrates that the liquidated damages clause is designed to secure Whitney Bank's performance of the Agreement, and not to reimburse Davis Bancorp for actual damages. *See, e.g., Telenois, Inc. v. Village of Schaumburg*, 256 Ill. App. 3d 897, 902, 628 N.E.2d 581, 585 (1st Dist. 1993) (letter of credit designed to penalize the plaintiff if it failed to perform in a timely manner was unenforceable).

Whitney Bank claims that Davis Bancorp's overall goal of securing performance is similarly reflected in the company's policy regarding agreement modification. As Whitney Bank sees it, anytime a customer modifies an agreement, the contract's commencement date automatically restarts such that the contract is in effect for five more years from that point. (Doc. 52-2 ¶ 14.) According to Ms. Summerfelt, the five-year renewal term is based on the fact that "you want some sort of a surety that it's a long-term commitment on both sides." (Summerfelt Dep., at 18.) Asset Recovery counters that both the customer and Davis Bancorp must mutually agree to restart the commencement date, but agrees that the company wants the assurances as stated by Ms. Summerfelt. (Doc. 55 ¶ 16.)

Asset Recovery also acknowledges that if a customer cancels an agreement with two years remaining on the contract, Davis Bancorp will receive 75% of what it would have collected if the customer had completed the contract term. (*Id*. ¶ 13.) Whitney Bank objects that this damages calculation fails to consider situations where, for example, Davis Bancorp is able to reallocate its resources to other routes or secure new contracts within a few weeks or months such that it does not in fact incur damages throughout the full two-year period. Notably, Davis Bancorp negotiated lower liquidated damages percentage rates for some customers, but Ms. Summerfelt indicated that this likely was based on "long-term relationships and goodwill" as opposed to actual expected damages in the event of a termination. (Summerfelt Dep., at 12.)

Asset Recovery suggests that Davis Bancorp's hypothetical is overly simplistic, noting that it is difficult to reallocate resources among customers. Tom Davis, Davis Bancorp's Vice President, detailed the process in his deposition testimony. Mr. Davis stated that when a customer requests a contract change, the company must first determine whether the change is feasible, considering such issues as (1) the date by which the client wants the change implemented; and (2) the company's ability to pick up and deliver within the requested timeframe in light of the time of day at issue, the traffic patterns for any new location, the additional mileage, and road construction and detours. (Doc. 46 ¶ 12; Davis Dep., at 19, 52.) Davis Bancorp must also determine whether the company can implement the requested changes while keeping other clients' schedules and routes intact. (*Id*. ¶ 13; Davis Dep., at 19.)

From there, the company must consider whether to modify computer-generated routes and hire more staff, as well as confirm that it can make delivery deadlines to the Federal Reserve. (*Id*. ¶ 14; Davis Dep., at 49.) Before the final change takes place, Davis Bancorp performs dry runs of the new routes in order to assess any applicable security concerns, including access and lighting. The company also considers any effect the change may have on cost. Though Davis Bancorp does not itemize the cost of changes for specific agreements, cost varies depending on

whether the company can add the delivery to an existing route or must make a separate trip to a new location. (*Id*. ¶¶ 15-19.)

This evidence suggests that it may be difficult for Davis Bancorp to secure customers whose courier service requirements complement those of existing clients. Under such circumstances, Asset Recovery has raised a question of fact as to whether the loss of any one customer, such as Whitney Bank, could reasonably lead to a 75% loss during the remaining term of the contract. Whitney Bank suggests that Davis Bancorp's willingness to negotiate smaller percentage rates with some clients demonstrates that the 75% rate in Whitney Bank's Agreement is a penalty. Perhaps, but it is possible that Davis Bancorp simply is willing to accept greater losses in connection with longstanding contracts.

Whitney Bank also stresses that for any given contract, Davis Bancorp could promptly retain a new client whose payments offset much of the value of the lost contract. Yet "it makes no difference how much the liquidated damages amount itself is – or for that matter how much the actual loss itself turns out to be – as long as the liquidated damages in the contract were a reasonable forecast of, and bore some relation to, the loss." *In re AE Hotel Venture*, 321 B.R. 209, 221 (Bankr. N.D. Ill. 2005). Notably, the liquidated damages in this case are calculated based on the actual remaining value of the Agreement at the time of breach, as opposed to an arbitrary number. *Compare Med+Plus Neck and Back Pain Ctr., S.C. v. Noffsinger*, 311 Ill. App. 3d 853, 860, 726 N.E.2d 687, 693 (2d Dist. 2000) (court deemed a liquidated damages provision a penalty where the plaintiff claimed it was a method of recouping training costs, but it bore "an inverse relation to the costs of training."), *with XCO Int'l Inc. v. Pacific Scientific Co.*, 369 F.3d 998, 1004 (7th Cir. 2004) (liquidated damages provision was enforceable where it "proportion[ed] damages to the remaining life of the patents.")

On these facts, Whitney Bank has not met its burden of showing that at the time of contracting on July 24, 2006, the liquidated damages clause bore no relation whatsoever to Davis Bancorp's actual damages in the event of a breach.

### 3. Proof of Actual Damages

For similar reasons, Whitney Bank has also failed to demonstrate as a matter of law that Davis Bancorp's damages would be certain and easy to prove. "When determining whether actual damages would be uncertain in amount and difficult to prove, . . . courts must look to the time of contracting, not the time of breach." *Jameson Realty Group v. Kostiner*, 351 Ill. App. 3d 416, 423, 813 N.E.2d 1124, 1130 (1st Dist. 2004) (internal quotations omitted). As noted, Asset Recovery presented evidence that there are many variables that must be considered in changing a client's contract, including timing, traffic, other clients' schedules, and cost.

Whitney Bank insists that calculating any change in cost is simple because Davis Bancorp uses a proprietary computer program that gives the company "an idea, in a dollar amount, of Davis Bancorp's increase in costs if an assignment is added, or Davis Bancorp's decrease in costs if an assignment is deleted." (Doc. 55 ¶¶ 17, 18.) Specifically, the computer performs a calculation "for a change in cost when a new branch is added, or if there is a change along a route." (*Id*. ¶ 19.) Whitney Bank argues that Davis Bancorp's damages "can be proven by entering certain variables into a computer program, and letting the computer program do the remainder of the work." (Doc. 52, at 12-13.) As Whitney Bank sees it, "[i]f Davis Bancorp can plug variables into a computer program to figure out the cost of added or deleted assignments, there is no reason why Davis Bancorp could not do the same to figure out the cost of the Whitney Bank routes that Davis Bancorp no longer runs." (*Id*. at 13.)

Asset Recovery responds that Whitney Bank's analysis is once again overly simplistic in that it focuses on only some of the variables at issue. Although Mr. Davis is able to determine

which variables to enter in the computer program based on his experience, Davis Bancorp does not in fact itemize the cost changes associated with changes in service agreements. (Doc. 55 ¶ 23; Doc. 46 ¶ 19.) Nor is it clear that the computer program can account for all the variables affecting cost changes. Notably, Whitney Bank opted not to respond to the arguments raised in Asset Recovery's brief or to its statement of facts, leaving the court with inadequate information to grant summary judgment on this issue. Significantly, there is no evidence conclusively establishing that at the time of contracting, the computer program would in fact enable Davis Bancorp to calculate its actual damages in the event of a breach. *Cf. M.I.G. Investments, Inc. v. Marsala*, 92 Ill. App. 3d 400, 406, 414 N.E.2d 1381, 1386 (2d Dist. 1981) (where parties presented evidence that dump sites record with particularity the size of each load dumped and the company that dumped it, "it would not seem that a determination of actual damages would be either difficult or impossible."); *Hickox v. Bell*, 195 Ill. App. 3d 976, 988, 552 N.E.2d 1133, 1141 (5th Dist. 1990) (in case involving sale and purchase of real estate, actual damages were not difficult to assess where parties had access to land values and "it would not be difficult to calculate the rent and or profits generated during any party's possession of the premises.")

Whitney Bank has not presented evidence sufficient to show that Davis Bancorp's damages were certain and easy to prove at the time of contracting, precluding summary judgment on the liquidated damages issue.

## **CONCLUSION**

For the reasons stated above, Whitney Bank's motion for partial summary judgment [Doc. 40, 52] is denied.

ENTER:

Dated: 09/16/10

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge